2801.  PAULK, administrator, v. CREECH.

1. Direct exceptions to a ruling upon pleadings in a civil case can be presented by a bill of exceptions only when the bill of exceptions is tendered to the judge within thirty days from the ruling complained of. Such exceptions are never proper subject-matter of a ground of a motion for a new trial. The defendant in the court below did not file exception pendente lite to the ruling of the court in striking a portion of his plea, and the ground of the motion for a new trial complaining of the ruling can not be considered.
2. Proof of a paper offered in evidence is always necessary when its execution is denied in a plea of non est factum.
3. It is well recognized that the execution of a contested paper and the genuineness of the signature of the purported signer may be established by a comparison of the disputed writing with other writings, proved or admitted to be genuine. This character of evidence is secondary only when there is a subscribing witness.
4. The statements of fact made by the trial judge in approving the grounds of a motion for a new trial are absolutely controlling, and grounds not approved by him can not be considered. No contention dependent upon facts wholly at variance with those stated by the court can be made.
5. One partner may sue another for an indebtedness growing out of transactions between them as individuals; but for one partner to maintain an action against another, the cause of action must be wholly disconnected from the partnership, unless there has been a settlement of the partnership affairs, and a balance struck, or unless, at least, the affairs of the partnership are so settled that the jury can ascertain what is justly due as a balance by one partner to the other to complete the settlement agreed upon.
6. The evidence warranted the verdict, and there was no error in refusing the motion for a new trial.

DECIDED FEBRUARY 7, 1911.

Complaint; from city court of Nashville—Judge Lankford presiding. June 1, 1910.

*J. P. Knight, W. G. Harrison,* for plaintiff in error.
*Hendricks & Christian,* contra.

RUSSELL, J.  Creech brought complaint on two notes against J. J. Paulk as administrator of D. L. C. Harper, deceased. Upon the trial the jury returned a verdict in favor of the plaintiff for $1,000 principal, interest, and attorney's fees. The bill of exceptions assigns error upon the refusal of the judge to grant a new trial. There is no other exception in the bill of exceptions. The administrator pleaded that his intestate never signed the notes sued upon nor authorized any one to sign them in his behalf, and that the notes were without consideration. He also pleaded by way

of set-off, in the seventh paragraph of his answer, a personal account alleged to be due by W. M. Creech individually to his intestate, D. L. C. Harper, and in the eighth paragraph he set up that the sum of $849.75 was due by the plaintiff to Harper individually, as representing an obligation of Harper and Creech, one half of which was the obligation of Creech due to Harper. The account referred to in the seventh paragraph of the plea was set out in a bill of particulars attached to the petition and marked "Exhibit A." The account of Harper and Creech, half of which it was asserted Creech was obligated to pay, amounting to $1612.18, was marked "Exhibit B." Upon objection, the judge struck the eighth paragraph of the defendant's answer and exhibit B. And upon objection made to the testimony in support of paragraph seven of the answer (the testimony showing that this account had reference to a partnership transaction), that testimony was excluded. The controlling question in the case is whether the judge erred in withholding from the jury the consideration of the testimony. tending to establish the plea of set-off.

1. We may say, in passing, that there was no error in striking the eighth paragraph of defendant's answer, which was as follows: "Defendant, J. J. Paulk, administrator, as aforesaid, further says that the plaintiff, W. M. Creech, is indebted to the said D. L. C. Harper in the sum of $849.73, as evidenced by a copy account hereto attached marked 'Exhibit B,' to which the usual leave of reference is prayed, the same showing an account of Harper and Creech, a firm composed of D. L. C. Harper and W. M. Creech, of which one half was the obligation of the said W. M. Creech due to said D. L. C. Harper individually by the said firm of Harper and Creech, all of which was, however, paid by D. L. C. Harper, making a total of $1,890.57, for the total of which he prays judgment against the said W. M. Creech." As a general rule one partner can not sue another, and the allegations of the answer were not sufficient to show an exception. But even if the striking of this paragraph of the answer had been erroneous we could not pass upon it, for two reasons. In the first place, error can not be assigned upon this ruling by making it the subject-matter of a. motion for new trial; and in the next place, even if exception had been taken to it directly in the bill of exceptions. it would have come too late, because the writ of error was not presented within thirty days from the ruling

complained of. The defendant did not file exceptions pendente lite, and as rulings upon the pleadings are not proper subject-matter of a ground of a motion for a new trial, this ground of the motion can not be considered.

2, 3. The next ground of the motion for a new trial complains that the judge erred in permitting the plaintiff to submit in evidence the two notes for $500 each, purporting to have been signed by D. L. C. Harper and payable to W. M. Creech, for the reason that a plea of non est factum had been filed in the case, and the execution of the two notes had not been proved. It is well settled, of course, that when a paper is offered in evidence, it is always necessary to prove its execution, if denied by plea of non est factum. We do not see any error, however, in the ruling of the court in the premises. When the notes were tendered in evidence the objection was made that their execution had not been shown. In response to this objection the court allowed the plaintiff to introduce several papers, and to prove that these papers had been signed by the deceased, and there was testimony as to the similarity of the signature of the deceased to the notes proved and those notes the execution of which was disputed. One witness swore that no man could make signatures more alike than the purported signature of the decedent and some of the signatures which were admitted to be his. We see no error in the course pursued by the court in respect to this testimony. Proof of the genuineness of a signature, when an issue is made upon that point, may be made by a comparison of the signature to the paper which is attacked with the handwriting of the signer upon other papers whose genuineness is proved or conceded. It is well settled that the execution of a contested paper and the genuineness of the signature of the purported signer may be thus established. This character of evidence is secondary only when there is a subscribing witness.

The statement of the court in ruling upon the objection to the testimony of the witnesses upon this point was that he would hold the matter of the execution of the two notes in abeyance until further proof by the plaintiff. After the witnesses testified to the genuineness of certain papers which they said were signed by the deceased, it was perfectly proper to submit the notes which were being sued upon to the jury, for them to judge by comparison in determining whether the notes were in fact genuine.

The ground of the motion for a new trial which alleges error in refusing to award a nonsuit need not be considered. As we have frequently ruled, the error, if any, in refusing to grant a nonsuit, where the case afterwards goes to a verdict, is more properly to be determined by a consideration of the ground that the finding was contrary to evidence.

4. The fifth and sixth special grounds of the motion for a new trial complain of the admission of certain testimony over the objection of the defendant's counsel. This testimony, relating to transactions with the deceased and being self-serving in its nature, was objectionable, but the judge, in his note in reference to these two grounds, states that he refused to allow any evidence of the plaintiff as to transactions between the deceased Harper and Creech until the attorneys for both plaintiff and defendant agreed that Creech should be allowed to testify to these transactions. Counsel for the plaintiff in error, in his brief, attempts to stress these grounds of the motion for new trial, and asserts that there is nothing in the record to show that the defendant's counsel agreed for Creech so to testify. The statements of fact made by the trial judge in approving the grounds of a motion for new trial are absolutely controlling, and those grounds of a motion for new trial which are not approved by him can not be considered. No contention dependent upon facts wholly at variance with those stated by the court can be made.

5. All the points with which we have dealt so far are elementary. The real question in this case, as presented in one form or another in the fourth, seventh, and eighth special grounds of the motion for a new trial, is whether the court erred in excluding evidence tending to show that Creech was indebted to Harper, the defendant's intestate, and to allow this indebtedness to be urged as a set-off to Creech's demand. We think the rulings upon this phase of the subject were correct. A well-established rule in most jurisdictions is that one partner can not sue another at law under any circumstances, but that the aid of equity must be invoked and an accounting asked for. Of course, in this State, where both law and equity are administered in the same forum, the general rule that one partner can not sue another is not based solely on the superficial ground that equity has jurisdiction of the subject-matter. It rests upon the broader principle that until a prior accounting and

settlement of partnership affairs, no cause of action exists between partners, founded solely upon partnership dealings. The real test is not solely whether the action can be tried without going into the partnership accounts, but whether the defendant has bound himself personally to the plaintiff. 2 Bates, Part. 878. See also *Benton* v. *Hunter,* 119 *Ga.* 381-384 (46 S. E. 414). In the case of *Miller* v. *Freeman,* 111 *Ga.* 654 (36 S. E. 961, 51 L. R. A. 504), Chief Justice Simmons refers to the general rule that one partner can not sue another for any matter arising from the partnership relation, and simply states the exceptions to that rule. Upon a consideration of numerous authorities, we think we may safely say that while one partner may, in Georgia, sue another for an indebtedness growing out of purely personal transactions between them as individuals, one member of a partnership can not maintain an action against his copartner upon a liability arising out of the partnership relation, unless there has been a settlement of the partnership and a balance struck, or unless at least the affairs of the partnership have been so settled that the jury can ascertain what would be justly due as the balance owing by one partner to the other under a settlement made, and in order to complete the settlement. The ruling in *Pool* v. *Perdue,* 44 *Ga.* 454, does not go further than to establish the second exception to which we have referred; and the generality of expression which is shown in that case has been explained and qualified in several later utterances of the Supreme Court. See *Wadley* v. *Jones,* 55 *Ga.* 332 (5) ; *Benton* v. *Hunter,* supra; *Huger* v. *Cunningham,* 126 *Ga.* 684 (2), 688 (56 S. E. 64). The recognized rule is that no action at law can be maintained by one partner against another where there has been no settlement of the partnership account, and no promise to pay the balance struck. See *Bennett* v. *Woolfolk,* 15 *Ga.* 213; *Prentice* v. *Elliott,* 72 *Ga.* 154; *King* v. *Courson,* 57 *Ga.* 11; Course *v.* Prince, 1 Mill, 416 (12 Am. D. 649) ; Dana *v.* Gill, 5 J. J. Marsh. (20 Am. D. 255) ; Burley *v.* Harris, 8 N. H. 233 (29 Am. D. 650) ; Graham *v.* Holt, 3 Ired. 300 (40 Am. D. 408) ; Bonnaffe *v.* Fenner, 6 S. & M. (45 Am. D. 278) ; Bruce *v.* Hastings, 41 Vt. 380 (98 Am. D. 592). Of course, there are exceptions to this general rule, such as those pointed out by Chief Justice Simmons in *Miller* v. *Freeman,* supra. If a partnership is limited to a single transaction, or the liability in question was antecedent or outside of the partnership,

or if by agreement a single item was to be separately adjusted, contribution may be had without an accounting. Of course, in any case, if the partnership has been closed and the accounting settled, and one partner has been required to pay an item that was overlooked, he may recover contribution, where there has been a settlement and a balance struck which is agreed to. The partner in whose favor the balance lies may sue in assumpsit. 7 Am. & Eng. Enc. Law, 361.

6. When the court struck the eighth paragraph of defendant's answer and exhibit B, which was an itemized statement of partnership liabilities, one half of which the defendant sought to set off against the plaintiff's demand, there were only two issues remaining in the case. The first was whether the notes were signed by the deceased or were forgeries. As we have already said, the genuineness of the signature of the purported maker could be very well established by comparison of the signatures, alleged to be forgeries, with other signatures of the deceased which were proved to be genuine. The notes were not attested by a witness, and therefore this character of evidence was not secondary in its nature. The jury had all the papers testified to have been signed by Harper, as well as the notes alleged to be forgeries, before them for their inspection and examination. They found the signature of Harper to the two notes to be genuine. That is an end to that portion of the case. The only other question in the case was whether the set-off attempted to be asserted by the seventh paragraph of defendant's answer was an indebtedness connected with and growing out of the partnership relations between Creech and Harper. Exhibit A, attached to paragraph seven of the answer, included a number of items which were stated as a matter of outside individual liability on the part of Creech to Harper, but it transpired, upon investigation, that all of these items of alleged indebtedness were dependent upon the partnership relation; and therefore this evidence was properly withdrawn from the jury. It is true that many of the items were for payments and advances to laborers, and, under the terms of the contract, Creech was to pay the laborers. In one sense Creech was indebted to Harper for these advances made by Harper to enable him to carry out his duty under the partnership contract, still, so far as the laborers and other creditors were concerned, the partnership as an entity was liable to them, irrespec-

tive of the terms of the contract between Creech and Harper. The partnership would be liable for all of these debts irrespective of the stipulations in the contract between Harper and Creech; and, therefore, Harper, in paying these partnership obligations, for which he was bound, did more than his duty so far as Creech was concerned, still, whether Creech really owed Harper anything would depend upon an accounting; for while Harper may have paid these accounts that Creech was obligated to him to pay, Creech may have paid more than his share of other obligations of the partnership, or Harper may have drawn more than his share of the profits. If Creech is indebted to Harper in any wise as a result of the operations of the partnership, Harper's administrator has his remedy; but inasmuch as there was no evidence that there had been a settlement or agreement as to the indebtedness set forth in exhibit A, and the evidence was undisputed that the defendant's account grew out of the partnership, it was error to exclude the consideration of the partnership affairs.　　　　　*Judgment affirmed.*